THE VETHAN LAW FIRM, P.C.
Charles M.R. Vethan
CA Bar No. 300098
cvethan@vethanlaw.com
1300 McGowen
Houston, Texas 77004
Tel: 713-526-2222
Fax: 713-526-2230
**Rule 5 Service**: edocs@vethanlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASCANI CORP, a California Corporation**<br>**Plaintiff,**<br>**vs.**<br>**CHARLES YI, ELLEN YI, MEGAN YI, PHINEAS YI, JEREMIAH SHIN. MCKINLEY HLADY. JAYSON SHONE. DANIEL KIM. DANIEL CHOI. JOSH KANG. METATEC CALIFORNIA, LLC, EXP DEVELOPMENT, LLC, INVICTUS GLOBAL GROUP, LLC, METATEC GLOBAL, LLC. and 390 FLOYD DEVELOPMENT PARTNERS. LLC.**<br>**Defendants.** | **Civil Action No.: 8:26-cv-00356**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Ascani Corp, by and through its undersigned counsel, files this *Plaintiff's Original Complaint* against Defendants Charles Yi, Ellen Yi, MetaTec California, LLC, EXP Development, LLC, and Invictus Global Group, LLC, and allege as follows:

## I. INTRODUCTION

1. This case arises from Defendants' fraudulent scheme to induce Plaintiff Ascani Corp (Ascani") to invest $1,000,000 and enter into multiple business agreements based on false representations regarding Defendants' assets, manufacturing capabilities, development projects, funding sources, and experience.

2. Beginning in approximately March 2025 and continuing through January 2026, Defendant Charles Yi presented himself as a successful real estate developer and manufacturer with exclusive access to steel framing factories, proprietary construction technology, and a substantial pipeline of large, funded projects throughout California, the United States, and internationally.

3. Yi represented that he owned and operated a 430,000 square foot steel framing factory in Thomaston, Georgia, possessed exclusive manufacturing rights, and was actively developing large, funded projects, including a 135-unit senior housing development in San Jose, California; the Lankershim Hotel; 800-1,000 steel-manufactured homes in Altadena; the Olympic K-Tower in Los Angeles; the K-Tower in Atlanta; Sports Illustrated Resorts; properties located at 385 Trousdale Place and 510 and 520 Stonewood Drive; artificial intelligence data centers in Utah and Colorado; and the Libertyland amusement park development..

4. Yi further represented that Ascani would serve as either the prime contractor, construction manager, or owner's representative on these projects and would generate millions of dollars in construction revenue.

5. Relying on these representations, Ascani invested $1,000,000 into MetaTec California, LLC on or about June 1, 2025, and entered into additional agreements requiring substantial financial commitments.

6. In reality, Yi did not own the factories he claimed, did not possess exclusive manufacturing rights, had been removed from projects he touted, and did not control the developments he used to solicit Ascani's investment. The promised projects never materialized.

7. When Ascani discovered Defendants' misrepresentations and demanded the return of its investment in or about September 2025, Defendants informed Ascani that removing the $1,000,000 capital contribution would result in Ascani no longer serving as the prime contractor on MetaTec projects. Over the following months, Ascani made repeated efforts to recover its investment. In or about December 2025, Defendants acknowledged in writing that Ascani's one-million-dollar ($1,000,000) capital contribution would be returned.

8. In January 2026, Ascani transmitted a proposed amendment to the MetaTec California, LLC Operating Agreement providing for a mandatory redemption of Ascani's membership interest and a repayment deadline of January 12, 2026. Ascani executed the proposed amendment; however, MetaTec failed and refused to execute the amendment or return Ascani's investment despite prior written acknowledgments that the funds would be repaid.

9. On or about January 26, 2026, Charles Yi sent an email to Ascani acknowledging that MetaTec California, LLC was not prepared to immediately redeem Ascani's membership interest and proposing instead that Ascani's capital contribution be converted into a corporate loan bearing twelve percent (12%) annual interest while MetaTec

attempted to repay the funds. In that communication, Yi described the "worst case scenario" as converting Ascani's capital investment into an interest-bearing loan until Ascani was "completely paid off." This proposal would have transformed Ascani from an equity member into a creditor and delayed its withdrawal from MetaTec despite prior written acknowledgments that the $1,000,000 investment would be returned. (Exhibit 10).

10. Defendants' conduct constitutes securities fraud, fraud in the inducement, breach of contract, unjust enrichment, conversion, and a coordinated conspiracy carried out through sham entities and agreements.

## II. PARTIES

11. Plaintiff Ascani Corp is a California corporation engaged in construction and development services with its principal place of business in Los Angeles County, California.

12. Defendant Charles Yi is an individual who orchestrated and executed the fraudulent scheme described is a citizen of California.

13. Defendant Ellen Yi is an individual who executed multiple agreements central to the events alleged herein, including as Managing Member of EXP Development, LLC and as Managing Member of Invictus Global Group, LLC. Plaintiff is informed and believes Ellen Yi and/or other Yi family members exercised control over MetaTec California, LLC through execution of agreements, communications, and control of funds. Ellen Yi is a citizen of California.

14. Defendant Megan Yi is an individual who served as a managing member of MetaTec California, LLC and exercised control over MetaTec's operations and finances. Megan Yi personally executed agreements central to the fraudulent scheme herein and

knowingly participated in and benefitted from Defendants' wrongful conduct. Megan Yi is a citizen of California.

15. Defendant Phineas Yi is an individual and a member of MetaTec California, LLC who upon information and belief, exercised ownership and control over MetaTec and participated in or benefitted from the fraudulent scheme herein. Defendant is a citizen of California and may be served personally with process at 6909 E Oak Ln, Orange, California 92869.

16. Defendant MetaTec California, LLC is a California limited liability company with its principal office at P.O. Box 6994, Orange, California 92863. MetaTec's registered agent is Jeremiah Shin, 27755 Tamara Dr, Yorba Linda, CA 92887.

17. Defendant EXP Development, LLC is a Wyoming limited liability company with its principal office at P.O. Box 6994, Orange, California 92863. EXP's registered agent is Registered Agents, Inc., 30 N. Gould St. Ste R, Sheridan, WY 82801.

18. Defendant Invictus Global Group, LLC is a Wyoming limited liability company with its principal office at 30 N Gould St., Ste. R, Sheridan WY 82801. Invictus' registered agent is Registered Agents, Inc., 30 N. Gould St. Ste R, Sheridan, WY 82801.

19. Defendant Jeremiah Shin is an individual who, at all relevant times, acted as a partner, close associate, and principal collaborator of Defendant Charles Yi in connection with MetaTec and the fraudulent scheme alleged herein. Shin participated in communications, representations, and business activities used to induce Ascani's investment. Jeremiah Shin is a citizen of California.

20. Defendant Mckinley Hlady is an individual who, at all relevant times, was a partner in MetaTec Global and, upon information and belief, held a substantial ownership

interest in MetaTec California, LLC. Hlady participated in and benefitted from the conduct alleged herein. Upon information and belief, Mckinley Hlady is a citizen of Canada.

21. Defendant Jayson Shone is an individual who, at all relevant times, was employed by or acted as an agent of Charles Yi and/or MetaTec and participated in project representations, communications, and activities furthering the fraudulent scheme. Jayson Shone is a citizen of California.

22. Defendant Daniel Kim is an individual who, at all relevant times, acted as a consultant for Charles Yi and MetaTec with respect to purported artificial intelligence data center projects, and who participated in representations made to Ascani concerning MetaTec's business operations and project pipeline. Daniel Kim is a citizen of California.

23. Defendant Daniel Choi is an individual and the son-in-law of Charles Yi who, at all relevant times, participated in and/or assisted with MetaTec's business operations, project representations, and financial transactions forming part of the fraudulent scheme. Daniel Choi is a citizen of California.

24. Defendant Josh Kang is an individual who, at all relevant times, was employed by or acted as an agent of Charles Yi and/or MetaTec and assisted in furthering the fraudulent conduct alleged herein. Josh Kang is a citizen of California.

25. Defendant MetaTec Global is a business entity that, at all relevant times, acted as a parent, affiliate, and/or controlling entity of MetaTec California, LLC, and upon information and belief held an ownership interest in MetaTec California, LLC. MetaTec Global participated in and benefitted from the fraudulent scheme alleged herein.

26. Defendant 390 Floyd Development Partners is a business entity that, upon information and belief, owns and/or controls the real estate development located at 390 Floyd

Street in San Jose, California. 390 Floyd Development Partners participated in and/or benefitted from the conduct alleged herein, including the inducement of Ascani's investment and representations concerning the Floyd Street project. The principal office of the company is located at 390 Floyd Street, San Jose, CA 95110. 390 Floyd Development Partners registered agent is Jeremiah Shin, 27755 Tamara Dr, Yorba Linda, CA 92887.

## III. JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa.

28. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

29. Venue is proper in this District under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391 because Defendants transacted business in this District, made and transmitted the misrepresentations into this District, and substantial acts and omissions giving rise to the claims occurred in this District.

## IV. EXHIBITS

30. Plaintiff relies on the following Exhibits in support of this Complaint:

Exhibit 1 – Zoom Call Transcripts

Exhibit 2 – AIA C104 Floyd Street Agreement

Exhibit 3 – Warning Texts / Libertyland Communications

Exhibit 4 – MetaTec Operating Agreement

Exhibit 5 – EXP Teaming Agreement

Exhibit 6 – Assignment of Membership Interest

Exhibit 7 – Supplemental Purchase Price Agreement

Exhibit 8 – Stock Purchase Agreement

Exhibit 9 – MetaTec Teaming Agreement ($1.8M)

Exhibit 10 – Emails and Text Messages

Exhibit 11 – MetaTec Operating Agreement Amendment

Exhibit 12 – CFO Capital Structuring and Planning

31. Plaintiff adopts each Exhibits by reference. Fed. R. Civ. P. 10(c).

## V. FACTUAL BACKGROUND

### A. Introduction and Initial Representations (April–May 2025)

32. In or about March 2025, Ascani's principals were introduced to Charles Yi through a religious and pastoral connection.

33. Between May and August 2025, Defendant Charles Yi, during recorded Zoom calls with Ascani's principals, represented that he personally owned and operated a 430,000 square foot steel framing factory in Thomaston, Georgia. Exhibit 1.

34. During the same Zoom calls, Charles Yi represented that MetaTec possessed exclusive manufacturing technology and proprietary steel construction systems, and that **no competitors** had access to the same systems.

35. Yi also represented that he had personally completed multiple large steel frame construction projects in Vancouver, Canada, and Florida. Exhibit 1.

### B. False Claims of Active and Funded Projects (June–September 2025)

36. On or about June 30, 2025, **Charles Yi**, during recorded Zoom calls, represented that MetaTec was actively developing the following major projects (Exhibits 1 and 2):

- The Libertyland amusement park project;

- A 135-unit senior affordable housing project at 390 Floyd Street in San Jose, California;
- Multiple residential developments throughout the United States.

37. Yi further represented that Ascani would serve as the exclusive or primary contractor performing steel framing and construction services on these projects.

38. Yi utilized proposed AIA construction contracts and project documentation to induce Ascani to believe that work on these projects was imminent and that Ascani would receive initial payments upon execution of the agreements, followed by additional construction contracts.

39. In reality, Yi failed to execute the promised construction contracts and failed to make any initial or subsequent payments to Ascani for work on the projects.

40. In or about August 2025, Ascani learned through third parties and documents that Yi's representations regarding the Libertyland project were entirely false.

41. At the time these representations were made, Charles Yi did not own the Thomaston, Georgia steel framing factory and lacked any ownership or controlling interest in that facility.

42. At the time Yi represented that MetaTec controlled or was developing the Libertyland project, Yi had already been removed from that project, and disputes and litigation regarding his involvement had occurred. Exhibit 3.

43. With respect to the 135-unit senior housing project at Floyd Street, upon information and belief, Yi may have maintained an ownership interest or control over the project; however, despite inducing Ascani's participation based on promises of executed

contracts and compensation, Ascani was never paid and was excluded from performing any work on the project.

44. In November 2025, Charles Yi admitted during communications with Tristan Yepez that he personally had never completed steel frame construction projects, and that the experience he had claimed belonged to unrelated third parties.

**C. Inducement of Ascani's $1,000,000 Investment (June 2025)**

45. On or about June 2025, Ascani invested one-million dollars ($1,000,000) into MetaTec California, LLC and became a member holding 25% membership interest. Exhibit 4.

46. Ascani's $1,000,000 investment in MetaTec California, LLC was entirely passive. Ascani had no authority to manage MetaTec's day-to-day operations, no control over bank accounts or expenditures, no authority to select or approve development projects, and no ability to bind MetaTec to contracts. All managerial decisions, financial control, and representations to investors were exercised exclusively by Charles Yi and Ellen Yi.

47. The investment was passive and based entirely on Defendants' representations.

48. No legitimate development projects were ever performed.

**D. The EXP Teaming Agreement and Additional Financial Inducement (September–November 2025)**

49. On or about September 3–4, 2025, Charles Yi transmitted communications requesting execution of a teaming agreement tied to a $500,000 disbursement to EXP Development, LLC. On November 1, 2025, Ascani and EXP Development, LLC executed a written Teaming Agreement under which Ascani agreed to pay EXP $500,000 for Ascani's

position as EXP's 'Prime Contractor' with a first right of refusal on EXP projects, and Ellen Yi executed the agreement as Managing Member of EXP.

50. The agreement promised Ascani the role of Prime Contractor on EXP's development projects.

51. No such projects were ever provided.

**E. <u>Agreements Designed to Conceal the Fraud (December 1, 2025)</u>**

52. On December 1, 2025, Defendants executed a series of interlocking agreements, including:

- Stock Purchase Agreement, executed on December 1, 2025, promising $1.8 million in payments (Exhibit 8);
- MetaTec Teaming Agreement, executed by both parties on January 1, 2026, promising $1.8 million in contractor payments (Exhibit 9).

53. On information and belief, these agreements were used to create the appearance of legitimate development activity, payment obligations, and funding while Defendants failed to return Ascani's capital contribution and failed to provide the promised transparency regarding the use of investor funds.

**F. <u>Defendants' Written Admission of Obligation to Repay (December 2025–January 2026)</u>**

54. Between December 15 and December 30, 2025, Yi acknowledged in texts and emails that Ascani's $1,000,000 investment would be returned. Exhibit 10.

55. Defendants failed to pay any portion.

//

//

**G. <u>Alter Ego and Conspiracy</u>**

56. Throughout 2025 and 2026, Charles Yi and Ellen Yi exercised complete dominion and control over MetaTec and EXP.

57. Ellen Yi personally executed the central agreements used to induce Ascani's investment and delay repayment.

58. MetaTec and EXP were undercapitalized and used as mere instrumentalities to carry out the fraudulent scheme.

59. There existed such unity of interest and ownership that the separate personalities of the individuals and entities did not exist.

60. Defendants knowingly conspired together to misrepresent assets, create sham agreements, and retain Ascani's funds.

## VI. CAUSES OF ACTION

**COUNT 1 - <u>Securities Fraud Under Section 10(b) and Rule 10b-5</u>**

61. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

62. Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 prohibit any person from making untrue statements of material fact or omitting material facts necessary to make statements not misleading in connection with the purchase or sale of any security.

63. Ascani's investment in MetaTec California, LLC constituted the purchase of a security, including a membership interest and investment contract, as Ascani's investment was passive and dependent upon Defendants' efforts and representations regarding the business, assets, and development projects of MetaTec.

64. Defendants made numerous material misrepresentations and omissions, as detailed above, including but not limited to false statements that:

(a) they owned and operated a 430,000 square foot steel framing factory in Thomaston, Georgia;

(b) MetaTec possessed exclusive manufacturing technology and proprietary construction systems;

(c) MetaTec was actively developing funded projects including the Libertyland development;

(d) substantial financing had been secured for those projects; and

(e) Ascani would generate substantial revenue as the prime contractor on those projects.

65. These statements were false when made and were known by Defendants to be false or were made with reckless disregard for the truth.

66. Defendants acted with scienter in that Charles Yi and Ellen Yi knew, or were deliberately reckless in not knowing, that their representations were false when made. At the time Yi represented that he owned the Thomaston, Georgia factory, he lacked any ownership interest in that facility. At the time Yi represented that MetaTec controlled or was actively developing the Libertyland project, he had already been removed from this project or lacked any contractual authority over them. Defendants nevertheless continued to solicit Ascani's investment and additional payments while concealing these facts. Defendants' subsequent admissions that Yi lacked the claimed experience, combined with their execution of post-hoc "clean-up" agreements designed to delay repayment, give rise to a strong inference of

conscious misconduct or, at minimum, deliberate recklessness, satisfying the scienter requirement of the Private Securities Litigation Reform Act.

67. **Charles Yi and Ellen Yi** made these misrepresentations for the specific purpose of inducing Ascani to invest $1,000,000 into MetaTec California, LLC and to enter into the EXP Teaming Agreement and related transactions, and but for these misrepresentations, Ascani would not have invested or executed those agreements..

68. Ascani reasonably relied upon Defendants' misrepresentations and suffered damages exceeding $1,000,000.

**COUNT 2 - <u>Fraud in the Inducement</u>**

69. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

70. Fraud in the inducement occurs when a party is induced to enter into a contract by false representations of material fact upon which the party reasonably relies.

71. As detailed above, Defendants knowingly made false representations regarding their ownership of manufacturing facilities, exclusive technology, funded projects, financial backing, and development experience.

72. Defendants further represented that Ascani would receive substantial construction work and profits by investing in MetaTec and entering into the EXP Teaming Agreement.

73. These representations were material and were made for the purpose of inducing Ascani to invest funds and enter into agreements.

74. Ascani reasonably relied upon Defendants' false representations and entered into the MetaTec Operating Agreement, the EXP Teaming Agreement, and related agreements.

75. As a direct and proximate result of Defendants' fraudulent inducement, Ascani suffered damages exceeding $1,000,000.

**COUNT 3 - <u>Common Law Fraud</u>**

76. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

77. As described above, Defendants made false representations of existing material facts, including false statements regarding assets, projects, funding, exclusivity, and experience.

78. Defendants knew the representations were false or made them recklessly without knowledge of their truth.

79. Defendants intended that Ascani rely upon these misrepresentations.

80. Ascani reasonably relied upon Defendants' false statements.

81. Ascani suffered substantial damages as a direct and proximate result of Defendants' fraud.

**COUNT 4 - <u>Breach of Contract</u>**

82. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

83. On January 1, 2026, Ascani Corp. and MetaTec California, LLC executed a teaming agreement with Ascani pursuant to which MetaTec agreed to make a $200,000 payment to Ascani and return Ascani's $1,000,000 investment by end of January.

84. The teaming agreement constituted a valid and enforceable contract.

85. Ascani fully performed or was excused from performance.

86. MetaTec breached the Teaming Agreement by failing and refusing to make the promised payments to Ascani, including failing to pay any portion of the amounts owed thereunder.

87. As a direct and proximate result of MetaTec's breach, Ascani suffered damages exceeding $1,000,000, together with interest and attorneys' fees as provided in the agreement.

**COUNT 5 - <u>Unjust Enrichment</u>**

88. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

89. Defendants received and retained Ascani's investment funds and other benefits.

90. Defendants obtained these benefits through false representations and deceptive conduct.

91. It would be inequitable and unjust for Defendants to retain the benefits obtained through fraud.

92. Ascani is entitled to restitution of all sums wrongfully obtained by Defendants.

**COUNT 6 - <u>Conversion</u>**

93. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

94. Ascani had ownership and possessory rights to its $1,000,000 investment funds.

95. Defendants wrongfully exercised dominion and control over those funds by retaining them after acknowledging their obligation to return the money.

96. Defendants' conduct constituted conversion.

97. Ascani suffered damages as a result.

**COUNT 7 - <u>Civil Conspiracy</u>**

98. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference as if fully set forth herein. FED. R. CIV. P. 10(c).

99. Defendants entered into an agreement and acted together to accomplish an unlawful purpose, namely defrauding Ascani, or a lawful purpose by unlawful means.

100. Defendants coordinated misrepresentations, executed sham agreements, transferred funds among controlled entities, and delayed repayment in furtherance of the conspiracy.

101. Ascani suffered damages as a direct and proximate result of Defendants' overt acts in furtherance of the conspiracy.

## VII. DAMAGES

102. Plaintiff realleges every allegation preceding this paragraph and adopts those allegations by reference.

103. As a direct and proximate result of Defendants' wrongful conduct, Ascani has suffered substantial damages.

104. Ascani invested $1,000,000 into MetaTec California, LLC based on Defendants' false representations and has not received the return of its investment.

105. Ascani further incurred damages by entering into agreements requiring substantial additional financial commitments, including the $500,000 obligation under the EXP Teaming Agreement.

106. Ascani also expended significant time, resources, and labor performing financial modeling and business planning work at Defendants' request without compensation. (Exhibit 12).

107. Ascani lost the opportunity to perform construction work and generate revenue on the projects Defendants falsely represented were active and funded.

108. Ascani has suffered consequential damages, interest losses, and other economic harm in an amount to be proven at trial.

## VIII. JURY DEMAND

109. Plaintiff demands a trial by jury on all issues so triable.

## IX. PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and award:

- Compensatory damages in excess of $1,000,000;
- Rescission of fraudulent agreements;
- Preliminary and permanent injunctive relief enjoining Defendants from transferring, concealing, or dissipating assets obtained through their fraudulent conduct;
- An accounting of all funds transferred among Defendants and their controlled entities;
- Prejudgment interest;
- Punitive damages;
- Attorneys' fees and costs;
- Such other relief as the Court deems just and proper.

DATED: February 13, 2026

Respectfully submitted:

The Vethan Law Firm, P.C.

/s/ ___________________

Charles M.R. Vethan
CA Bar No. ___________
cvethan@vethanlaw.com
1300 McGowen
Houston, Texas 77007
Tel: 713-526-2222
Fax: 713-526-2230

Rule 5 Service Email:
edocs@vethanlaw.com

***Attorney for Plaintiffs***